SCANNED

EOD
1-16-02

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

FILED-CLERK
U.S. DISTRICT COURT

02 JAN 11 PM 5:10

TX EASTERN-BEAUMONT

BY_____

| | | |
|---|---|---|
| TOMMY WELLS, JR. and <br> CHERYL WELLS <br> Plaintiffs | § <br> § <br> § <br> § | |
| vs. | § | CIVIL ACTION NO. 9:00-CV-142 |
| NACOGDOCHES COUNTY, TEXAS <br> and EDWARD THORNTON <br> Defendants | § <br> § <br> § <br> § | |

## MEMORANDUM OPINION

Before the court is Defendants' Motion for Summary Judgment [Dkt. #27], and the court having reviewed the motion and response on file is of the opinion that the motion be GRANTED.

The plaintiffs in this case allege that the Director of the Nacogdoches County Department of Health and Environment Service caused them to be unlawfully arrested and that he did so maliciously. The plaintiffs filed this action against both the County and the Director, individually, asserting claims under 42 U.S.C. § 1983 and various state law causes of action. Now before the court is the defendants' motion for summary judgment.

### I. Summary Judgment Standard

A court should grant summary judgment when "there is no genuine issue as to any material fact and [] the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material if it might affect the outcome of a case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue exists when, in the context of the entire record, a reasonable fact-finder could return a verdict for the non-movant. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 885-86 (1990). The court must view the evidence introduced and all factual inferences from



1

the evidence in the light most favorable to the party opposing summary judgment. *Eastman Kodak v. Image Technical Services*, 504 U.S. 451, 478 (1992); *Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268, 1272 (5th Cir. 1994). However, this favorable presumption for the non-movant exists only when the non-movant presents an actual controversy of fact. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

## II. Background

Tommy and Cheryl Wells owned a trailer park in Nacogdoches County, Texas, named Naconiche Village. While a corporation was set up to run the trailer park, the Wells owned the land on which the park was located. Cheryl Wells was listed as the corporation's CEO, but Tommy Wells ran the day-to-day operations of the park. While she would help out with the corporate books, Mrs. Wells, evidently, spent little time at the park or working on corporate business.

Starting in July of 1998, Mr. Wells began meeting with Edward Thornton, the Director of the Nacogdoches County Department of Health and Environmental Service at the time, and his assistant, Benny Serrano, to discuss a septic system for the trailer park. Mr. Wells received a list of licensed installers of septic systems from Thornton and called several names on the list. Mr. Wells originally planned to install a wetlands septic system for the trailer park, but he claims this became economically impossible when the estimate for the system went from $60,000 to $150,000. Mr. Wells claimed Thornton gave him permission to install a temporary septic system until a permanent, aerobic system could be installed. Parts of the septic system were installed by licensed installers, but Wells installed other parts of the system himself. Mr. Wells is not a licensed installer. Mr. Wells admitted that he altered work that had been done by licensed installers–sometimes with Thornton's permission, but other times without his permission. After he had already installed septic tanks that exceeded 5000 gallons, Tommy Wells claimed Thornton informed him that his tanks

could not exceed 5000 gallons. Mr. Wells admitted that there were more trailers hooked up to the system than it was designed to handle, but claims this was because of the 5000 gallon limit.

From the time the park opened, it experienced sewage problems. In September of 1998, Mr. Serrano told Mr. Wells that before any additional homes could be brought into the park, Wells would have to bring the park up to state standards. Mr. Wells allowed new renters to move into the park even after this warning from Mr. Serrano.

In January of 1999, Thornton sent a letter to the Wells explaining that if the problems were not fixed, legal action would be taken. Mr. Wells told his wife that he would handle the situation. Over the course of the next year, the park suffered from constant episodes of effluent surfacing on the property and other septic system problems. During this time, eighteen people moved out of the park and Thornton and Serrano constantly visited the park to meet with Mr. Wells.

Several tenants complained to Mr. Wells about sewage backups into their homes and effluent surfacing on the property and he acknowledged that several tenants filed complaints directly with the County. He stated that he attempted to remedy these situations as quickly as possible.

In December of 1999, Thornton received a complaint that a plastic pipe from the Wells' property was pumping effluent into a ditch on Simmons Road. Mr. Wells claimed the plastic pipe connected to a drain, so that he actually pumped treated water from the septic system through the pipe and into the ditch.

Thornton prepared and filed criminal complaints against Tommy and Cheryl Wells in November and December of 1999. The plaintiffs were then arrested on December 19, 1999, pursuant to these complaints filed by Thornton. The Nacogdoches Daily Sentinel reported the arrest on its front page. On May 2, 2001, a state court dismissed the charges against the plaintiffs after receiving the plaintiffs' motions for dismissal that stated the criminal penalties for the charges

3

brought against Tommy and Cheryl Wells had been repealed by the state legislature.[1]

The plaintiffs have now brought this suit in federal court against Nacogdoches County and Edward Thornton claiming unlawful arrest, malicious prosecution, tortious interference with a business relationship, and causes of action pursuant to 42 U.S.C. § 1983.

### III. The Plaintiffs' Unlawful Arrest Claim Against Edward Thornton

The right to be free from an illegal arrest is protected by the Fourth Amendment. *Sorenson v. Ferrie*, 134 F.3d 325, 328 (5th Cir. 1998). "The Constitution does not guarantee that only the guilty will be arrested." *Baker v. McCollum*, 443 U.S. 137, 145 (1979). An arrest is illegal if made without probable cause. *Id.* at 144-45. Probable cause exists where an officer possesses knowledge that would warrant a prudent person's belief that the plaintiff had already committed or was committing a crime. *Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1305 (5th Cir. 1995).

In this case the plaintiffs were charged with violating various provisions of the Texas Health and Safety Code. The court finds Edward Thornton had probable cause to believe Tommy and Cheryl Wells had already committed and/or were committing a crime.

Thornton's complaint against Tommy Wells alleged that he violated § 341.014 of the Texas Health and Safety Code, which states: "Human excreta in a populous area shall be disposed of through properly managed sewers, treatment tanks, chemical toilets, or privies constructed and maintained in conformity with the department's specifications, or by other methods approved by the department. The disposal system shall be sufficient to prevent the pollution of surface soil, the

---

[1] The Wells' motions to dismiss stated that the criminal penalties for violations of Chapter 366 of the Texas Health and Safety Code were repealed in 1997 by Act of 175th Legislative Session, Chapter 1072, § 60(4). While the state legislature repealed the criminal penalty provision of Chapter 366 in 1997, the legislature that year added a criminal provision to the Texas Water Code for violations of Chapter 366 of the Texas Health and Safety Code. TEXAS WATER CODE ANN. § 7.173 (Vernon 2000).

contamination of a drinking water supply, the infection of flies or cockroaches, or the creation of any other public health nuisance." TEX. HEALTH & SAFETY CODE ANN. § 341.014(a) (Vernon 2001). This section also prohibits depositing human excreta within 300 feet of a highway unless properly treated. TEX. HEALTH & SAFETY CODE ANN. § 341.014(e) (Vernon 2001). These provisions are subject to both criminal and civil sanctions under the Texas Health and Safety Code §§ 341.091(a) and 341.092(b).

It is undisputed that Tommy and Cheryl Wells owned the land on which Naconiche Village sat. It is also undisputed that Thornton and his assistant, Mr. Serrano, visited this land several times between July 1998 and December 1999. Over this seventeen month period, human excreta constantly surfaced on the property and backed up into the residents' homes. It is further undisputed that Mr. Serrano told Tommy Wells in September of 1998 that the property needed to be brought up to state standards before additional homes could be brought onto the property. It is also undisputed that additional homes were brought onto the property after September of 1998 and that the property was never brought up to state standards. Finally, it is undisputed that the County received numerous complaints from tenants of Naconiche Village regarding effluent surfacing on the land and, specifically, on December 10, 1999, Mr. Thornton received a complaint that the Wells were pumping effluent through a plastic pipe into a ditch alongside Simmons Road.

Based on the numerous complaints received by the County Health Department, the personal observations of Mr. Thornton and Mr. Serrano, and their conversations with Mr. Wells, Mr. Thornton possessed knowledge that would warrant a prudent person's belief that Mr. Wells had violated and was violating § 341.014 of the Texas Health and Safety Code. As such, Mr. Thornton had probable cause to believe that Tommy Wells had violated § 341.014 of the Texas Health and Safety Code.

The complaint Mr. Thornton filed against Mrs. Wells alleged that she violated several provisions of the Texas Health and Safety Code, including § § 366.051 and 366.055, which require a person to have a permit to construct, alter, repair, extend, or operate an on-site sewage disposal system and require the owner to notify the Health Department of the installation of any system in order to allow the Department to inspect the system. TEX. HEALTH AND SAFETY CODE ANN. § § 366.051(c) and 366.055(c) (Vernon 2001). Section 7.173 of the Texas Water Code makes violations of these provisions of the Texas Health and Safety Code criminal offenses.

It is undisputed that Mrs. Wells owned the land upon which the trailer park sat and that she held the position of president in the corporation set up by her and her husband to manage the park. The evidence also shows that for a seventeen month period, the trailer park suffered from constant violations of the Texas Health and Safety Code. During this time, Mr. Wells, an unlicensed installer, repeatedly constructed, repaired, and altered the park's septic system. Both Mr. and Mrs. Wells as owners of the land and Mrs. Wells as president of the corporation failed to acquire permits for these activities and failed to notify the County Health Department for necessary inspections during this period. Mr. Thornton possessed knowledge of this activity and, as such, had probable cause to believe Cheryl Wells violated the Texas Health and Safety Code.

Because the court finds Mr. Thornton possessed good reason to believe the plaintiffs had committed and/or were committing a crime, the plaintiffs' arrest were not unlawful. Accordingly, the defendants' motion for summary judgment is granted with regard to the plaintiffs' unlawful arrest claim.

## IV. The Plaintiffs' Malicious Prosecution Claim Against Edward Thornton

A plaintiff in a malicious prosecution suit must establish the following elements: 1) the commencement of a criminal prosecution against the plaintiff; 2) initiation or procurement of the

action by the defendant; 3) termination of the prosecution in the plaintiff's favor; 4) the plaintiff's innocence; 5) the absence of probable cause for the proceedings; 6) malice in filing the charge; and 7) damage to the plaintiff. *Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 517 (Tex. 1997); *Taylor v. Gregg*, 36 F.3d 453, 455 (5th Cir. 1994) (applying Texas law). Public policy, however, discourages bringing malicious prosecution suits and proof in such actions must be positive, clear and satisfactory. *ITT Consumer Finance Corp. v. Tovar*, 932 S.W.2d 147, 160 (Tex. Civ. App.–El Paso 1996, writ denied).

As stated above, this court finds Edward Thornton had probable cause to file the criminal complaint against Tommy and Cheryl Wells. Furthermore, the dismissal of the criminal complaint on a motion by the accused is not considered a termination of the prosecution in the plaintiff's favor for purposes of a malicious prosecution claim. *Ellis v. Sinton Sav. & Loan Assn.*, 455 S.W.2d 834, 842 (Tex. Civ. App.–Corpus Christi 1970, writ ref'd n.r.e.); RESTATEMENT (SECOND) OF TORTS § 660 cmt. a (1977).

As such, the plaintiffs are unable to establish several elements needed to succeed in their malicious prosecution cause of action, and accordingly, the defendants' motion for summary judgment regarding the plaintiffs' malicious prosecution claim is granted.

## V. The Plaintiffs' Tortious Interference with Business Relationships Claim Against Edward Thornton

Finally, the plaintiffs' have brought a claim of tortious interference with a business relationship against Edward Thornton. In order to recover for this type of tort a plaintiff must prove that the defendant's conduct was independently tortious or wrongful. *Wal Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001). To establish "independently tortious" behavior, the Texas Supreme Court requires the plaintiff to show that the defendant's conduct would be actionable under

a recognized tort. *Id.* Because the plaintiffs have failed to show that Mr. Thornton's conduct was independently tortious, Thornton's motion for summary judgment should be granted with regard to this claim of the plaintiffs.

## VI. The Plaintiffs' Claims Against Nacogdoches County

If Edward Thornton inflicted no constitutional injury on the plaintiffs, Nacogdoches County cannot be found liable for violations of the plaintiffs' constitutional rights. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (holding that damages cannot be awarded against a municipal corporation based upon the actions of one of its officers if that officer inflicted no constitutional harm). The Fifth Circuit has expressly restated *Heller* while distinguishing it from a case in which the officers were found to have qualified immunity, which would protect only the individual officers, not the municipality. *Brown v. Lyford*, 243 F.3d 185, 191 (5th Cir. 2001). In reciting the holding of *Heller*, the *Brown* court stated that "if the plaintiff does not show any violation of his constitutional rights–then there exists no liability to pass through to the county." *Id.* Therefore, Nacogdoches County is entitled to summary judgment on plaintiffs' § 1983 claims because Edward Thornton did not commit a constitutional violation.

Furthermore, Nacogdoches County possesses governmental immunity for intentional tort claims. TEX. CIV. PRAC. & REM. CODE ANN. § 101.057(2) (Vernon 1997). Malicious prosecution and tortious interference with business relationships are intentional torts from which the County's governmental immunity protects it from suit. *See Hempstead v. Kmiec*, 902 S.W.2d 118, 122 (Tex. Civ. App–Houston [1st Dist.] 1995, no writ) (malicious prosecution); *Inman v. City of Katy*, 900 S.W.2d 871, 873 (Tex. Civ. App.–Corpus Christi 1995, no writ) (tortious interference with business relationships).

Accordingly, the court must grant defendants' motion for summary judgment for all claims

brought by the plaintiffs against Nacogdoches county.

## VII. Conclusion

For all the reasons stated above, the court hereby GRANTS the Defendants' Motion for Summary Judgment.

SIGNED, this 11th day of January, 2002.

_____
HOWELL COBB
UNITED STATES DISTRICT JUDGE